UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

E<small>DDIE</small> B<small>ROWN</small>,

    Plaintiff,                               Hon. Hala Y. Jarbou

v.                                             Case No. 1:23-cv-122

C<small>OMMISSIONER OF</small>
S<small>OCIAL</small> S<small>ECURITY</small>,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that, if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether

the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 42 years of age on his alleged disability onset date. (PageID.42). Plaintiff successfully completed high school and worked previously as a fast-food worker and general machinist. (*Id.*). Plaintiff applied for benefits on December 6,

2019, alleging that he had been disabled since January 15, 2019, due to foot injuries, plantar fasciitis, diabetes, and depression. (PageID.33, 390).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Christopher Ambrose, in an opinion dated December 21, 2021, determined that Plaintiff did not qualify for disability benefits. (PageID.33-44, 105-49). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in

significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from (1) status post left foot plantar fasciotomy with continued discomfort; (2) degenerative disc disease of the lumbar spine with radicular symptoms into the lower left extremity; (3) status post lumbar spine decompression surgery; (4) torn left knee meniscus; (5) right wrist degenerative joint disease; (6) attention deficit-hyperactivity disorder (ADHD); and (7) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.36-37).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) he can occasionally operate left foot controls; (2) he requires an at-will sit/stand option (provided he is not off-task more than ten percent of the workday); (3) he can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; (4) he can occasionally balance, stoop, and kneel but can never crouch or

crawl; (5) he must avoid concentrated exposure to extreme cold, heat, humidity, and excessive vibration; (6) he must avoid all use of moving machinery and exposure to unprotected heights; (7) he can frequently handle and finger with his dominant right upper extremity; and (8) he can perform simple, routine, and repetitive tasks (unskilled work with a specific vocational preparation of one or two).  (PageID.37-38).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding.  *O'Neal*, 799 Fed. Appx. at 316.  In satisfying this burden, the ALJ may rely on a vocational expert's testimony.  *Ibid*.

In this case, a vocational expert testified that there existed approximately 415,000 jobs in the national economy which an individual with Plaintiff's RFC could perform.  (PageID.43).  This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").  Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

**I.     Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff alleges that he is entitled to relief because he satisfies or medically equals the requirements of Section 1.15 which concerns "disorders of the skeletal spine resulting in compromise of a nerve root(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15. To satisfy this listing, Plaintiff must satisfy A, B, C, *and* D:

- A. Neuro-anatomic (radicular) distribution of one or more of the following *symptoms* consistent with compromise of the affected nerve root(s):

    1. Pain; or
    2. Paresthesia; or
    3. Muscle fatigue.

    AND

- B. Radicular distribution of neurological *signs* present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:

    1. Muscle weakness; and
    2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
    3. Sensory changes evidenced by:
        a. Decreased sensation; or
        b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; *or*
    4. Decreased deep tendon reflexes.

AND

C.  Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

AND

D.  Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following:

   1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

   2. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), *and* a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

   3. An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

(*Id.*).

Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). An impairment satisfies a listing, however, "only when it manifests the specific findings described in all of the medical criteria for that particular impairment." *Lambert v. Commissioner of Social Security*, 2013 WL

5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)).

To prevail on an argument that his condition medically equals a listed impairment, Plaintiff must "present medical evidence that describes how [his] impairment is equivalent to a listed impairment." *Tyler v. Commissioner of Social Security*, 2021 WL 405762 at *5 (W.D. Mich., Feb. 5, 2021). This requires Plaintiff to "present medical findings showing symptoms or diagnoses equal in severity and duration to all the criteria for the one most similar listed impairment." *Ibid*.

In support of his argument that his impairment meets or medically equals this Listing, Plaintiff cites to a single examination. (PageID.740-52). This examination, conducted on September 28, 2020, indicates that the degenerative changes in Plaintiff's lumbar spine had progressed to the point that L5-S1 decompression surgery was necessary. (*Id.*). Plaintiff underwent lumbar decompression surgery on October 14, 2020. (PageID.759-61).

On October 26, 2020, Plaintiff rated his pain as 5/10 but rated his activity level as 10/10. (PageID.767). Plaintiff reported that he was "feeling somewhat better" and was "up walking daily." (*Id.*). When asked if he wanted to attend physical therapy, Plaintiff responded that he "wants to wait." (*Id.*). Plaintiff's surgeon reported that Plaintiff could lift 20 pounds. (*Id.*). Treatment notes dated November 23, 2020, indicate that Plaintiff exhibited full range of motion with no evidence of muscle atrophy or difficulty ambulating. (PageID.788-92). An examination of Plaintiff's upper extremities was likewise unremarkable. (*Id.*).

On March 15, 2021, Plaintiff reported that he "feels well with no complaints." (PageID.1007). Treatment notes dated March 22, 2021, indicate that Plaintiff's gait, sensation, and coordination were all "normal." (PageID.1008-09). Treatment notes dated April 26, 2021, indicate that Plaintiff's gait and station were "unremarkable." (PageID.863). It was further noted that Plaintiff can sit, stand, push, pull, get on/off examination table, and ascend stairs. (PageID.865).

Imaging of Plaintiff's cervical, thoracic, and lumbosacral spine, performed on April 28, 2021, revealed "normal" alignment. (PageID.872-74). Treatment notes dated June 29, 2021, revealed no musculoskeletal abnormalities or abnormalities in Plaintiff's extremities. (PageID.1061). Treatment notes dated October 25, 2021, indicate that Plaintiff's gait and station were both "normal." (PageID.1066). Plaintiff has also reported that he does not need a cane or assistive device to walk. (PageID.126, 862).

Even if the Court assumes that Plaintiff's impairments satisfy or medically equal subsections A, B, and C, Plaintiff has failed to demonstrate that his impairment satisfies or medically equals subsection D. There is no evidence that Plaintiff has a documented need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands. There is likewise no evidence that Plaintiff's ability to use his upper extremities is impaired to the extent required by this Listing. Accordingly, this argument is rejected.

## II.     Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").    Plaintiff argues that he is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence.    Specifically, Plaintiff argues that the ALJ erred by failing to sufficiently account for his right wrist impairment and non-exertional limitations.

As noted above, the ALJ found that Plaintiff experiences degenerative joint disease of the right wrist.   The evidence, however, does not support the argument that such limits Plaintiff to an extent greater than the ALJ recognized in his RFC assessment.    Plaintiff first reported experiencing wrist pain on September 27, 2021. (PageID.1000).    An examination revealed "mildly" decreased range of motion, "intact" sensation, and 5/5 strength.    (*Id.*).    X-rays revealed "no fracture or dislocation" and "no degenerative changes."    (PageID.1069).    Treatment notes dated November 9, 2021, revealed "no injury."    (PageID.1156).    Plaintiff was instructed to treat his wrist with anti-inflammatory mediation and therapy exercises.    (*Id.*).    The results of a nerve conduction study, performed on December

7, 2021, revealed "no electrophysiologic evidence of compression neuropathy or radiculopathy affecting the right arm." (PageID.1187).

As for Plaintiff's non-exertional limitations, the ALJ recognized that Plaintiff experienced depression and ADHD. Plaintiff began therapy in July 2020. (PageID.718-32). The results of a mental status examination were "within normal limits." (PageID.725-27). Treatment notes dated March 24, 2021, indicate that medication improved Plaintiff's focus and "slowed down" his speech. (PageID.1123). Plaintiff likewise reported that "things are going mostly better." (*Id.*). Subsequent treatment notes reveal largely unremarkable findings which are entirely consistent with the ALJ's RFC findings. (PageID.1071-1121).

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. The Court does not question that Plaintiff experiences significant limitations. The ALJ's RFC finding, however,

sufficiently accounts for such by restricting Plaintiff to a limited range of sedentary work. In sum, the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument is essentially that the ALJ should have weighed and evaluated the evidence differently. This is not grounds for relief, however. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 7, 2024           /s/ Phillip J. Green
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge